OPINION
{¶ 1} Appellant, Jason Fusillo ("Fusillo"), was tried in the Trumbull County Court of Common Pleas, Juvenile Division, on the single charge of contributing to the unruliness of a child. He was found guilty, fined $250, and sentenced to six months in jail, all but thirty days of which was suspended. Upon review, we affirm the judgment of the trial court.
 {¶ 2} Prior to the commencement of testimony at trial, Fusillo stipulated that the incident took place within the jurisdiction of the juvenile court, that the female involved in the incident was a minor, and that there was sexual contact sufficient to constitute a culpable act. Still to be determined at trial, therefore, was whether Fusillo had the requisite mental state to perform the illegal act. In this connection, Fusillo defended on the basis that he was intoxicated and that he thought the sexual contact was being directed toward the minor's mother instead of the minor herself. He also argues in this court that the mere touching of a minor child, by itself, does not constitute criminal activity.
 {¶ 3} At this time, Fusillo also stipulated to the admission of two state's exhibits, consisting of a statement given by him approximately one week after the incident and audiotapes with Fusillo's comments on them concerning the incident.
 {¶ 4} At trial, the state proved that Fusillo engaged in sexual contact with a minor during the early morning hours of September 24, 2002. The minor was fourteen years old at the time. Fusillo was twenty-eight years of age.
 {¶ 5} The incident took place in the living room of the home of Gary and Bridget Schimpf. Fusillo was like a member of the Schimpf family. They had known him for about twenty years; he sometimes babysat for them; and they considered him like a son.
 {¶ 6} Fusillo was intoxicated when he arrived at the Schimpf household. Fusillo arrived there between 2:00 a.m. and 3:00 a.m. to discuss with the Schimpfs the status of their other daughter. Fusillo's intention in meeting with them was to request that they allow the other daughter to return home after her period of incarceration had expired.
 {¶ 7} During the conversation with Gary and Bridget Schimpf, which lasted about an hour, their minor daughter entered the living room and lay down on the couch to go to sleep. In time, Bridget went to bed for the night, leaving Fusillo, Gary Schimpf, and the minor daughter in the living room. Then Gary Schimpf went to bed, leaving Fusillo in the room with his minor daughter. Sometime before 6:00 a.m., the minor daughter burst into the parents' bedroom and demanded that her father throw Fusillo out of the house, stating "just imagine the worst thing that could possibly happen." The father, Gary Schimpf, told Fusillo he had to leave the house at once.
 {¶ 8} Gary Schimpf testified that when he went to bed that night, both Fusillo and his minor daughter were still in the living room watching television. When he threw Fusillo out of the house, Fusillo did not say anything to him. Schimpf believed that Fusillo was still too intoxicated to say anything.
 {¶ 9} The minor daughter testified she was awake when her father went to bed, but that she was groggy and half asleep. When asked if something inappropriate happened while she was lying on the couch, she said:
 {¶ 10} "[Fusillo] came over to the couch and he started touching me on my breasts. He licked me on my stomach and breasts, sucked my breasts, touched my ass. He tried to open my legs while I was laying [sic] on the couch but I forced them closed and I was like half awake, half asleep and I was in shock and really didn't know what to do. So by the time he asked me to move to the floor I rolled over the back of the couch, went into my parents' room and asked them to kick him out."
 {¶ 11} She testified that this period of touching her lasted fifteen to twenty minutes before she exited the living room to seek out her parents' assistance.
 {¶ 12} Fusillo defended his actions on the basis that he was intoxicated and that he never intended to engage in sexual contact with the minor daughter. In his version of the events, there were no lights on, and he thought Bridget Schimpf, the minor's mother, was the object of his sexual contact. In his words, "I seen a blonde lady on the couch" after he had awakened from sleeping in a chair. He lay down on the floor next to the couch and grabbed some of the blanket the lady was using to cover himself. He started reaching and touching the female on the couch, whom he thought to be the mother, and as he eventually got a better look at her, he realized it was not the mother, but the minor daughter. He denies having attempted any conversation with her, stating that he was in shock at the realization of what he had done. Thus, he said that it was mistaken identity on his part and that he never intended to engage in sexual contact with the minor daughter.
 {¶ 13} Fusillo admitted that there had been no prior incidents with the mother that would have led him to believe that he could engage in sexual contact with her.
 {¶ 14} The trial court found Fusillo guilty of contributing to the unruliness of a minor and sentenced him to six months in the Trumbull County Jail. It suspended all but thirty days of the sentence and fined him $250 as well. Fusillo timely appealed from that judgment entry.
 {¶ 15} Fusillo presents a single assignment of error:
 {¶ 16} "O.R.C. 2919.24 is not a strict criminal liability statute, but one requiring the culpable mental state of recklessness and therefore there is insufficient evidence to convict the appellant herein."
 {¶ 17} R.C. 2919.24 provides, in pertinent part:
 {¶ 18} "(A) No person, including a parent, guardian, or other custodian of a child, shall do any of the following:
 {¶ 19} "(1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 of the Revised Code * * *;
 {¶ 20} "(2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022
of the Revised Code * * *;
 {¶ 21} "* * * {¶ 22} "(B) Whoever violates this section is guilty of contributing to the unruliness or delinquency of a child, a misdemeanor of the first degree."
 {¶ 23} An "unruly child" is defined in R.C. 2151.022 to include "(C) [a]ny child who behaves in a manner as to injure or endanger the child's own health or morals or the health or morals of others[.]"
 {¶ 24} In the charging instrument, Fusillo was charged with a violation of R.C. 2919.24(A)(2). The conduct causing the child to become an unruly child was stated as "engage in sexual contact with above juvenile," the "above juvenile" having been previously named in the charging instrument.
 {¶ 25} We review this assignment of error to determine if there is sufficient evidence as a matter of law to sustain the conviction.
 {¶ 26} "In reviewing a record for sufficiency, `the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' * * * `The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts.'"[1]
 {¶ 27} One of the elements to be determined in a sufficiency of the evidence analysis is the mental state of the defendant in committing the act of contributing to the unruliness of a child.[2] In the recent case of State v. Moody, the Supreme Court of Ohio held that "the culpable mental state of recklessness applies to the offense of contributing to the unruliness or delinquency of a child under former R.C. 2919.24."[3]
 {¶ 28} R.C. 2901.22(C) defines "recklessly" as follows:
 {¶ 29} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 30} A review of the record indicates that there is sufficient evidence on each and every element of the crime of contributing to the unruliness of a child, including the mental state of recklessness. Under R.C. 2919.24(A)(2), an offender must commit an "act" which tends to "cause a child" to become an "unruly child." An "unruly child" is one who "behaves in a manner" as to "injure or endanger the child's own health or morals."[4] Under the holding of the Moody case, the act must be done recklessly, that is, with heedless indifference to the consequences.
 {¶ 31} Fusillo acknowledged that he made sexual contact with the minor child. He observed her enter the living room where he and her father were holding a conversation. At trial, he testified that he observed the minor child sit down next to her mother on the couch, though in his earlier statement to ACCSB, he made no mention of having observed the minor child enter the room. According to Gary Schimpf's testimony, Fusillo and his daughter were watching television when he went to bed. When Fusillo awoke from sleeping in a chair for some period of time in the living room, he approached a female on the couch and lay down next to the couch. Before long, he was reaching and touching the female in her erogenous zones. The room was dark or dimly lit, but he kept up his sexual contact for up to fifteen to twenty minutes. He denied having any conversation with the female on the couch during the incident and denied making any remark when first confronted by the minor child's father, saying he was "in shock." At a minimum, his actions bespeak an attitude of heedless indifference to the identity of the female person on the couch. Even accepting his version of the incident, incredible as it is, it was reasonable for the trier of fact to conclude that Fusillo was acting "recklessly."
 {¶ 32} Moreover, Fusillo's argument that his intoxication led to the mistaken identity of the daughter as the mother is not well taken as a defense. R.C. 2901.21(C) provides that:
 {¶ 33} "Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. Voluntary intoxication does not relieve a person of a duty to act if failure to act constitutes a criminal offense. Evidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged."
 {¶ 34} Fusillo stipulated that he made sexual contact with the person on the couch and, thus, was physically capable of performing the act with which he is charged. The above-quoted statute precludes any further consideration of his intoxication as a defense to his actions.
 {¶ 35} Finally, Fusillo argues that the mere touching of a young child does not by itself constitute a crime. This argument has no merit because the record demonstrates that the acts of sexual contact, lasting as they did for some period of time, went well beyond "mere touching" of a child. Had this child been under thirteen years old, they would have provided the basis for a charge of gross sexual imposition.[5] Fusillo's acts were well beyond the bounds of permissible touching of another person.
 {¶ 36} The assignment of error is without merit.
 {¶ 37} We affirm the judgment of the trial court.
Grendell, J., Rice, J., concur.
[1] (Citations omitted.) State v. Monroe, 105 Ohio St.3d 384,2005-Ohio-2282, at ¶ 47.
[2] State v. Moody, 104 Ohio St.3d 244, 2004-Ohio-6395, at ¶ 17.
[3] Id.
[4] R.C. 2151.022.
[5] See R.C. 2907.05(A)(4).