OPINION
{¶ 1} Appellant, Mr. William L. Armstrong ("Mr. Armstrong"), appeals from the December 18, 2006 judgment entry of the Geauga County Court of Common Pleas, which sentenced him after being convicted by a jury of one count of vandalism to a police cruiser. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural Issues
 {¶ 3} On August 22, 2005, at approximately 9:39 p.m., Mr. Armstrong was driving a bulldozer eastbound in the westbound lane of Rock Creek Road, without *Page 2 
headlights, while intoxicated. A confrontation with two police officers ensued and ultimately, Mr. Armstrong dropped the bucket of the bulldozer onto a police cruiser, smashing the windshield and hood of the vehicle. The grand jury returned an indictment on October 6, 2005, for two counts of felonious assault to a police officer, in violation of R.C. 2903.11(A)(2), felonies of the first degree, and one count of vandalism, in violation of R.C. 2909.05(B)(2), a felony of the fourth degree.
 {¶ 4} Mr. Armstrong entered a plea of not guilty at his arraignment on October 14, 2005. On December 21, 2005, Mr. Armstrong filed a motion for a competency and mental evaluation to stand trial and for his mental condition at the time of the offense, as well as a motion to change his plea to not guilty by reason of insanity. The court granted the motion for a competency evaluation and ordered that an evaluation be performed pursuant to R.C. 2945.371(A) on January 1, 2006. On May 19, 2006, on the court's own motion, a copy of the examiner's report was disclosed to both the prosecutor and Mr. Armstrong's counsel.
 {¶ 5} On May 25, 2006, the date of the scheduled competency hearing, Mr. Armstrong signed a plea agreement in which he agreed to enter an Alford plea to the lesser included offense of felonious assault and pay fines of $713.10 to Geauga County and $250 to Clemson Towing for the damage he caused to the police cruiser. In return, the state agreed to seek leave to dismiss counts two and three. The court accepted Mr. Armstrong's Alford plea on May 31, 2006, and the case was set for sentencing on July 6, 2006.
 {¶ 6} However, on July 6, 2006, Mr. Armstrong appeared before the court for sentencing, pro se and intoxicated. The court reset the sentencing hearing for the *Page 3 
following day, July 7, 2006. On that day, Mr. Armstrong filed a motion to withdraw his guilty plea and a notice of substitution of counsel. On September 21, 2006, the court found Mr. Armstrong's motion to withdraw his guilty plea was well taken in that Mr. Armstrong testified that he had been drinking prior to the hearing and that he did not fully comprehend the nature or consequences of his plea, the rights he was waiving, or the potential penalties he faced.
 {¶ 7} On November 9, 2006, the court granted the state's November 2, 2006 motion to amend the indictment as to the vandalism charge and the charge was amended to a felony of the fourth degree since the amount of property damage was just over $700.
 {¶ 8} On November 14, 2006, the court issued a pretrial order, which granted the state's October 31, 2006 motion in limine to prohibit the introduction of any evidence of Mr. Armstrong's intoxication on the night of the incident or any evidence of Mr. Armstrong's mental health for the purpose of determining Mr. Armstrong's mental state as opposed to a determination as to whether or not Mr. Armstrong was physically capable of performing the act charged.
 {¶ 9} A jury trial was then held on November 14 and 15, 2006. The state presented the testimony of Deputy Matthew Bosworth ("Deputy Bosworth") of the Geauga County Sheriff's Office, Chief Robert Fowler ("Chief Fowler") of the Thompson Police Department, Sergeant Gerald Fowler ("Sergeant Fowler"), fleet manager for the Geauga County Sheriff's Office, and Mr. John Kafka ("Mr. Kafka"), one of Mr. Armstrong's acquaintances who was also an eyewitness to the event. The state also entered into evidence pictures from the scene. Mr. Armstrong then presented the *Page 4 
testimony of Mr. Marty Klingenmeir and his wife, Mrs. Letha Klingenmeir, who testified to Mr. Armstrong's peaceful character and the condition of the bulldozer. The jury then deliberated on November 16, 2006 and November 20, 2006, whereupon the jury handed down a verdict finding Mr. Armstrong guilty of one count of vandalism and not guilty of two counts of felonious assault.
 {¶ 10} The matter was then set for sentencing on December 5 and the court by its judgment of conviction filed December 18, 2006, sentenced Mr. Armstrong to a twelve month term of incarceration, and ordered him to pay $963.10 in restitution to the Geauga County Commissioners for the damage done to the police cruiser, and to pay $750 in court costs. Mr. Armstrong then made a motion to suspend the execution of his sentence pending appeal, which was denied orally and memorialized in the December 18, 2006 judgment of Mr. Armstrong's conviction.
 {¶ 11} On March 23, 2007, Mr. Armstrong requested an oral hearing to suspend the execution of his sentence, which was denied on April 3, 2007. On April 4, 2007, Mr. Armstrong filed a motion to vacate payments of fines, court costs, and/or restitution pursuant to R.C. 2929.511. The court denied this motion on April 13, 2007, finding that Mr. Armstrong's motion was not based on any existing statute, and further, that he did not make a showing of indigency.
 {¶ 12} Mr. Armstrong now appeals from the December 18, 2006 judgment of conviction entry and raises the following assignment of error:
 {¶ 13} "The jury's verdict finding appellant guilty of vandalism was against the manifest weight of the evidence where appellant was incapable of committing the acts *Page 5 
that were the basis of the charge and did not "knowingly" cause serious physical harm to governmental property."
 {¶ 14} Standard of Review
 {¶ 15} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." State v. Pesec, 11th Dist. No. 2006-P-0084, 2007-Ohio-3846, ¶ 74, citing State v. Floyd, 11th Dist. No. 2005-T-0072, 2006-Ohio-4173, ¶ 8, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 16} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at ¶ 75, citing Floyd at ¶ 9,Martin at 175. "The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion." Id., citing Floyd at ¶ 9, citing Thompkins at 390 (Cook, J., concurring.) "The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of witnesses." Id., citing Floyd at ¶ 9, citing State v.DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 17} Manifest Weight Review
 {¶ 18} In his sole assignment of error, Mr. Armstrong argues that the jury's verdict is against the manifest weight of the evidence since he was incapable of *Page 6 
operating the bulldozer with the precision that would be necessary to undertake the lowering of the bucket of a bulldozer into a police cruiser, and therefore, he did not knowingly cause serious physical harm to governmental property. Specifically, Mr. Armstrong contends that because he was operating an old and malfunctioning bulldozer, while intoxicated, with headlights shining into his eyes at the time of the incident, he was incapable of vandalizing the police cruiser. For the following reasons, we find Mr. Armstrong's argument to be without merit.
 {¶ 19} Based upon the evidence and testimony that the state presented, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice when it convicted Mr. Armstrong of one count of vandalism to a police cruiser. Specifically, the evidence reflected that on the evening of August 22, 2005, Deputy Bosworth and Chief Fowler responded to a call that there was a disturbance at Mr. Armstrong's house and that Mr. Armstrong had requested police assistance. When they arrived at the scene, each in a separate vehicle, Mr. Armstrong informed them that there had been trespassers on his property, but that they had fled the scene. As Deputy Bosworth and Chief Fowler were standing in the driveway preparing to leave the residence they observed a dark colored pickup truck pull into the driveway, and then back out suddenly and speed out onto Rock Creek Road.
 {¶ 20} Deputy Bosworth and Chief Fowler decided to investigate to see if this vehicle was involved in the disturbance that had allegedly occurred at Mr. Armstrong's residence. They spoke with the occupants of the truck, Mr. Ernest Corrigan ("Mr. Corrigan"), and Mr. Kafka, who were acquaintances of Mr. Armstrong. They indicated that they were friends of Mr. Armstrong and that they there were on their way to visit *Page 7 
him when they saw the deputy and the chief standing in Mr. Armstrong's driveway. They decided they did not want to be involved in whatever was occurring at the time, which is why they backed out of the driveway and drove away. They then asked the officers whether they could return to Mr. Armstrong's residence. The officers informed them that there was no problem and they were free to leave.
 {¶ 21} As Mr. Corrigan and Mr. Kafka were leaving, a car pulled up to Deputy Bosworth and Chief Fowler and informed them that a bulldozer was driving down the road in the wrong lane without headlights. Deputy Bosworth and Chief Fowler turned their vehicles around to investigate with Deputy Bosworth's vehicle in the lead. He observed a stopped vehicle in the eastbound lane with two individuals standing in front of the vehicle. As he slowed his vehicle, he turned his attention back to his lane and noticed an oncoming bulldozer was driving in his lane. The deputy slammed on his brakes, coming to a stop approximately fifteen to thirty feet in front of the bulldozer. Both Deputy Bosworth and Chief Fowler activated their lights, exited their vehicles, and identified the individuals who were standing on the road as Mr. Corrigan and Mr. Kafka. They were yelling at Mr. Armstrong to get off the bulldozer as the officers approached. Mr. Armstrong noticed them, realized who they were and said "Hey, guys, you are free." Deputy Bosworth and Chief Fowler then approached the bulldozer and ordered Mr. Armstrong to stop the bulldozer and to get off the vehicle. Mr. Armstrong responded by stopping the bulldozer. However, he refused to leave the bulldozer and left the engine running.
 {¶ 22} Mr. Kafka and Mr. Corrigan again told Mr. Armstrong to get off the bulldozer. At that point, Mr. Armstrong throttled up the bulldozer, turned the machine in *Page 8 
the officers' direction, who were now standing directly in the path of the bulldozer, and started to move it toward them. Deputy Bosworth and Chief Fowler began walking backwards while screaming to Mr. Armstrong to stop the bulldozer. Mr. Armstrong proceeded to head towards them while simultaneously raising the bucket of the bulldozer into the air. Deputy Bosworth and Chief Fowler retreated in between the police cruisers and Mr. Corrigan's truck for safety. Mr. Armstrong proceeded to maneuver the bulldozer in between the vehicles and then lowered the bucket of the bulldozer onto Deputy Bosworth's vehicle where one of the prongs of the bucket smashed into the windshield and hood of the police cruiser.
 {¶ 23} Deputy Bosworth drew his gun as he and Chief Fowler approached the bulldozer, ordering Mr. Armstrong to turn off the bulldozer. Mr. Armstrong turned the bulldozer off, but refused to abandon the machine. Deputy Bosworth re-holstered his gun, and he and Chief Fowler scaled the bulldozer to attempt to get Mr. Armstrong to abandon the bulldozer. As Chief Fowler attempted to take the key out of the ignition, Mr. Armstrong struck Deputy Bosworth in the chest in his attempt to strike Chief Fowler. He then stood up on the bulldozer tracks and informed the officers that he would "get down on his own." However, he refused to leave the tracks of the bulldozer and at that point, Deputy Bosworth reached up, grabbed a hold of him, and physically removed him from the bulldozer, whereupon he was handcuffed and taken into custody. Sergeant Farrow, the fleet manager for the Geauga County Sheriffs Office testified that the total repair fee for the windshield and hood of the police cruiser was $713.10. *Page 9 
 {¶ 24} Mr. Armstrong contends that he was incapable of committing such an offense since he was intoxicated, driving without headlights, and had lights flashing into eyes when he lowered the bucket of the bulldozer into the police cruiser.
 {¶ 25} The fact that Mr. Armstrong was highly intoxicated and blew a .244 on a breathalyzer test on the night of the incident is no defense for this crime. It is well established that "[voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." State v. Fusillo, 2004-T-0005, 2005-Ohio-6289, ¶ 33, citing R.C. 2901.21(C). However, as the trial court properly allowed, "[e]vidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged." Id. The jury could well have found that Mr. Armstrong was in control of his physical faculties and was capable of lowering the bulldozer bucket onto Deputy Bosworth's vehicle by the mere fact that he was capable of driving and turning the bulldozer, albeit in the wrong lane of traffic, at the time the incident occurred and that he was also observed raising and lowering the bucket before striking the damaging blow. This argument is unpersuasive.
 {¶ 26} Equally unpersuasive is Mr. Armstrong's argument that he was incapable of performing such an act since the bulldozer was old and mechanically faulty. Mr. Armstrong failed to present such evidence to the jury. Rather, the evidence presented revealed that the bulldozer was impounded for one year following the incident and that it had been stored outside. Upon its release, Mr. Armstrong's friend, Mr. Klingenmeir, testified that he has been leasing the vehicle and has operated the bulldozer for *Page 10 
approximately one hundred to one hundred twenty hours on his property without trouble, although the bulldozer was manufactured in 1969 and runs a bit erratically.
 {¶ 27} Mr. Armstrong also contends that his view was obstructed since it was night, there were headlights flashing into eyes, and the bucket was in front of his field of vision. Further, he asserts that the noisy operation of the bulldozer prevented him from hearing his friends and the officers' attempts to get him to stop the bulldozer.
 {¶ 28} All of this information was conveyed to the jury through the testimony of Mr. Kafka, Deputy Bosworth, and Chief Fowler. Although Mr. Armstrong contends that these factors prevented him from "knowingly" committing this act, there is more than enough evidence from which the jury could find that Mr. Armstrong was aware that his conduct would probably cause a certain result. These reasons do not negate the simple fact that Mr. Armstrong did not stop the vehicle upon the officers' approach. He responded to Deputy Bosworth and Chief Fowler's attempts to get him off the bulldozer by throttling up the idling engine, which he then proceeded to maneuver towards them, coming to a stop in front of Deputy Bosworth's vehicle, at which point he lowered the bucket of the bulldozer into the police cruiser.
 {¶ 29} Furthermore, "[i]t is well-settled that when assessing the credibility of witnesses, `[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. McKinney, Jr., 11th Dist. No. 2006-L-169,2007-Ohio-3389, ¶ 49, citing State v. Grayson, 11th Dist. No. 2006-L-153, 2007-Ohio-1772, ¶ 31, citing State v. Awan (1986),22 Ohio St.3d 120, 123. *Page 11 
 {¶ 30} A review of the aforementioned evidence reveals nothing to suggest the jury lost it way or that such a manifest miscarriage of justice has occurred that warrants a new trial. Surely there was sufficient evidence in this case from which the jury could find that Mr. Armstrong knowingly caused serious physical harm to government property.
 {¶ 31} Mr. Armstrong's assignment of error is without merit.
 {¶ 32} The judgment of the Geauga County Court of Common Pleas is affirmed.
 COLLEEN MARY OTOOLE, J., TIMOTHY P. CANNON, J., concur. *Page 1