OPINION
{¶ 1} On March 28, 2007, a drug task force set up a controlled buy of seven pounds of marijuana through an informant. Mr. Roger A. Humphrey, one of those arrested and subsequently indicted, was found guilty of complicity in drug trafficking and possession of marijuana, as well as the improper handling of a firearm in a motor vehicle, after a three-day jury trial. He now appeals, challenging his conviction and the manifest weight of the evidence. *Page 2 
 {¶ 2} We affirm, determining Mr. Humphrey's contentions are without merit in that he was properly convicted for complicity to drug trafficking pursuant to R.C. 2923.03(A)(2) and R.C. 2925.03(A)(1), and possession of marijuana pursuant to R.C. 2925.11(A). Pursuant to the Supreme Court of Ohio's recent holding in State v. Cabrales,118 Ohio St.3d 53, 2008-Ohio-1625, these are not allied offenses of similar import. Thus, Mr. Humphrey was properly convicted on both counts. Moreover, he was ordered to serve a three-year term of imprisonment on each count concurrently. Further, we agree with the jury that the manifest weight of the evidence supports a finding of guilt. Mr. Humphrey negotiated the price for the drugs, procured the drugs, and then was arrested at the scene when he arrived for the drop-off, with his loaded gun lying on the floor of the van behind his seat, which was next to a black bag that contained seven pounds of marijuana.
 {¶ 3} The police were introduced to Mr. Humphrey and his possible drug dealings through one of Mr. Humphrey's "friends," "R.C," who became a paid informant in exchange for the dismissal of his pending charges for driving with a suspended license and petty theft. The original target of the operation was another one of R.C.'s "friends," Mr. Jeremy Grimm. He was also convicted and arrested at the scene, and testified at Mr. Humphrey's trial while awaiting his sentencing.
 {¶ 4} An initial small "controlled" buy was arranged between Mr. Grimm and R.C, spearheaded by Detective Tackett of the Trumbull County Sheriff's Department. Detective Tackett contacted Officer Daniel Adkins, an officer for the city of Niles Police Department, to be the undercover agent for the larger purchase after the controlled buy was successful. Detective Tackett, Officer Adkins, and the other officers of the TAG *Page 3 
team (at the time a drug enforcement task team made up of Trumbull, Ashtabula, and Geauga counties) set up the operation for a larger buy, again with the cooperation and aid of R.C., who agreed to be wired and arrange the buy.
 {¶ 5} On March 28, 2007, Officer Adkins and a wired R.C. drove to Mr. Grimm's house on Riverside Road in Warren, Ohio to negotiate and purchase at least five pounds of marijuana. R.C. testified that the first time he saw Mr. Humphrey had a gun was when he entered Mr. Grimm's house and Mr. Humphrey lifted his shirt, displaying the black handle of a gun that was inserted in his pocket. R.C. went inside, where he negotiated with Mr. Grimm and Mr. Humphrey for the sale of several pounds of marijuana while Mr. Grimm's two young children played nearby. R.C. told Mr. Grimm that the "customer" (Officer Adkins) preferred to stay in the car because he was paranoid. After several minutes of negotiating, R.C. went out to the car and informed Officer Adkins that he could purchase seven pounds for $1,325 per pound. Officer Adkins agreed to the deal and R.C. went back inside Mr. Grimm's home to confirm. Moments later, R.C. waved Officer Adkins inside because Mr. Grimm and Mr. Humphrey wanted to ensure that Officer Adkins was not a police officer.
 {¶ 6} While in the home, Officer Adkins did not see Mr. Humphrey. After Officer Adkins denied he was a police officer, Mr. Grimm showed Officer Adkins a quarter-pound of the "product," which was not at the house at the time. Officer Adkins agreed to the purchase, informing Mr. Grimm that he needed to go to the bank to withdraw the $9,275 needed for the final purchase. They each agreed to fulfill their end of the deal and meet back at Mr. Grimm's house. *Page 4 
 {¶ 7} When Officer Adkins returned to Mr. Grimm's home, he pulled in behind Mr. Humphrey, who had left in his Suburban to retrieve the marijuana, but then returned in a green minivan, which was driven by a Mr. Raynato Smith, some 15 minutes later. Mr. Grimm waved Officer Adkins into the house, but Officer Adkins did not respond. At that moment, the rest of the undercover team descended upon the deal, arresting Mr. Smith and Mr. Humphrey, who were still inside the minivan, as well as Mr. Grimm and R.C. R.C. tried to run off, but was eventually apprehended.
 {¶ 8} At the scene, during the arrest, Detective Tackett went over to the van, where he saw a black bag partially open with marijuana in it and a handgun between the second and third row seats of the minivan. He searched Mr. Humphrey for weapons. A later pat-down by another officer revealed that Mr. Humphrey had a small bag of marijuana in his back pocket.
 {¶ 9} The van was then seized and towed, and a search warrant obtained so the van could be properly searched. The black bag found in the minivan contained four bags of marijuana, as well as a smaller black bag, which contained three bags of marijuana. Each of the seven one-gallon bags held approximately one pound of marijuana. Four feet from the front passenger compartment, lying on the floor of the van, was a semiautomatic loaded pistol that was not in a locked trunk or glove box. In Detective Tackett's opinion, this gun was fully reachable to a person sitting in the passenger seat.
 {¶ 10} A subsequent search of Mr. Humphrey's home revealed multiple items that had marijuana "residue." The residue was not tested by BCI I, but rather, in the opinion of Detective Tackett, was marijuana. Those items included a silver briefcase, a *Page 5 
blue waterproof duffle bag, and a metal grinder. The same "residue" was also found in the center console of Mr. Humphrey's Suburban, which had been parked in the garage when he initially left Mr. Grimm's house to retrieve the marijuana. Other items seized from the search of Mr. Humphrey's home included a small bag of marijuana, an imitation cigarette, a digital pocket scale, baggies, one gallon-size bag, as well as packaging that is typically used for marijuana. The officers destroyed the packaging on the spot because of the strong chemical odor it was emitting. A firearm box for a high-point handgun, with the serial number P232369, the same serial number as the loaded gun found in the van, was also found in Mr. Humphrey's master bedroom.
 {¶ 11} BCI I investigators testified that a total of seven pounds had been in the black bag found in the minivan, and that 48.9 grams of marijuana were also found, although it is unclear whether this smaller amount was the bag found in Mr. Humphrey's pocket, his home, or the bag found in Mr. Grimm's house. BCI I firearms examiner, Mr. Jonathan Gardner, testified that the serial number of a gun is unique for the make and model of each particular gun, and that the gun found in the van matched the serial number of the gun box in Mr. Humphrey's home.
 {¶ 12} In exchange for his efforts R.C. not only got his charges dismissed, but was also paid $650 for the information and cooperation he provided. He admitted on the stand that he would lie "to save his own skin," and further admitted to lying to both Officer Adkins and Mr. Grimm during the drug negotiations. He admitted that he contradicted himself on the surreptitious recording when he told Officer Adkins that Mr. Humphrey had a pistol in both his front and back pocket. He also confessed on cross-examination that he did indeed lie, that Mr. Humphrey only had one pistol on his person, *Page 6 
and that he did not remember which particular pocket it was, although he had told Officer Adkins that Mr. Humphrey had guns in both pockets.
 {¶ 13} Several other officers who secured the scene also testified for the state, as well as Mr. Grimm. The defense rested after the state's case-in-chief was concluded and Mr. Humphrey's motions for acquittal pursuant to Crim. R. 29 were denied, both after the state's case-in-chief and at the close of the case.
 {¶ 14} The jury found Mr. Humphrey guilty on all three counts of the indictment. Thus, Mr. Humphrey was convicted for one count of complicity to trafficking in marijuana, a second-degree felony, in the vicinity of a juvenile, with a firearm specification and forfeiture in violation of R.C. 2923.03(A)(2), R.C. 2925.03(A)(1) (C)(3)(d), R.C. 2924.42(A)(1)(b) and R.C. 2941.141; one count of possession of marijuana, a third-degree felony, with a firearm specification and forfeiture in violation of R.C. 2925.11(A) (C)(3)(d), R.C. 2925.42(A)(1)(b) and R.C. 2941.141; and one count of improperly handling firearms in a motor vehicle, a fourth-degree felony in violation of R.C. 2923.16(B) (I)(2).
 {¶ 15} Mr. Humphrey was sentenced on April 29, 2008 to serve two three-year concurrent terms of imprisonment on the counts of complicity in drug trafficking and possession of marijuana; a one-year term of imprisonment to be served concurrently to the first two counts for the improper handling of a firearm in a motor vehicle; as well as a one-year term on the firearm specification to be served prior and consecutive to counts one, two, and three, for a total four-year term of imprisonment. Further, the court suspended Mr. Humphrey's license for six months, informed him of mandatory post-release control, and ordered him to submit to DNA testing. *Page 7 
 {¶ 16} Mr. Humphrey now timely appeals, raising two assignments of error:
 {¶ 17} "[1.] The trial court erred and abused its discretion by sentencing appellant on two counts, when they were allied offenses of similar import.
 {¶ 18} "[2.] The Appellant's convictions are against the manifest weight of the evidence."
 {¶ 19} In his first assignment of error, Mr. Humphrey contends that the trial court abused its discretion in convicting him for both complicity to trafficking in drugs and possession of marijuana, specifically arguing that they are allied offenses of similar import. Thus, Mr. Humphrey argues that the trial court erred in convicting him on both counts because the Supreme Court of Ohio recently ruled inState v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, that these offenses are allied offenses of similar import. The court held in that case that to traffic in drugs pursuant to R.C. 2925.03(A)(2), one must necessarily possess the drugs in violation of R.C. 2925.11(A). We find Mr. Humphrey's argument to be without merit as he is correct in his analysis of Cabrales, but not as applied to the present case. Mr. Humphrey was not convicted of complicity to trafficking in drugs in violation of R.C. 2925.03(A)(2), but rather R.C. 2925.03(A)(1), which the Supreme Court of Ohio clearly held in Cabrales is not an allied offense of similar import with possession pursuant to R.C. 2925.11(A). Thus, Mr. Humphrey can be and was correctly convicted for both offenses.
 {¶ 20} As Mr. Humphrey did not seek merger of the counts, we review for plain error. "It is well settled that the failure to object to the trial court's failure to merge charges for sentencing waives all but plain error." State v. Town, 11th Dist. No. 2007-T-0120, 2008-Ohio-6878, ¶ 45, citing State v. Elmore, 111 Ohio St.3d 515, 534, 2006-Ohio-6207. *Page 8 
"A plain error is one which affects a party's substantial rights thereby affecting the outcome of the proceedings." Id. See, e.g., State v.Stanley, 11th Dist. No. 2007-P-0104, 2008-Ohio-3258, ¶ 29.
 {¶ 21} R.C. 2941.25, the multiple offense statute, states in pertinent part:
 {¶ 22} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 23} "The appropriate test for determining whether the multiple offenses at issue are allied offenses of similar import is whether the elements of the crime, viewed in the abstract, correspond to such a degree that the commission of one crime will result in the commission of the other." Town at ¶ 44, citing Cabrales at paragraph one of the syllabus; see, also, State v. Rance, 85 Ohio St.3d 632, 636. "To the extent the elements do so correspond, a defendant may not be convicted of both unless the court finds that the crimes were committed separately or with a separate animus." Id., citing Cabrales at 638-639.
 {¶ 24} Mr. Humphrey was convicted of complicity to drug trafficking in violation of R.C. 2923.03 and R.C. 2925.03(A)(1), and possession of marijuana in violation of R.C. 2925.11(A).
 {¶ 25} The complicity statute, R.C. 2923.03 states, in relevant part:
 {¶ 26} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 27} "* * *
 {¶ 28} "(2) Aid or abet another in committing the offense; * * *" *Page 9 
 {¶ 29} The drug trafficking statute, R.C. 2925.03 states, in relevant part:
 {¶ 30} "(A) No person shall knowingly do any of the following:
 {¶ 31} "(1) Sell or offer to sell a controlled substance * * *"
 {¶ 32} Further, R.C. 2925.11(A), the possession of drugs statute, states:
 {¶ 33} "No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 34} As noted earlier, Mr. Humphrey is correct in his assertion that the Cabrales court found R.C. 2925.03(A)(2) and R.C. 2925.11(A) to be allied offenses of similar import "because commission of the first offense necessarily results in the commission of the second." (Emphasis sic.) Id. at ¶ 30. This argument fails, however, because Mr. Humphrey misreads the holding of Cabrales as applied to this case, since he was convicted of R.C. 2925.03(A)(1) and not R.C. 2925.03(A)(2).
 {¶ 35} In comparing R.C. 2925.03(A)(1) and R.C. 2925.11(A), theCabrales court unequivocally held "possession under R.C. 2925.11(A) and trafficking under R.C. 2925.03(A)(1) are not allied offenses of similar import because commission of one offense does not necessarily result in the commission of the other." (Emphasis added.) Id. at ¶ 29. The court explained that "to be guilty of possession under R.C. 2925.11(A), the offender must `knowingly obtain, possess or use a controlled substance.' To be guilty of trafficking under R.C. 2925.03(A)(1), the offender must knowingly sell or offer to sell a controlled substance. Trafficking under R.C. 2925.03(A)(1) requires an intent to sell, but the offender need not possess the controlled substance in order to offer or sell it. Conversely, possession requires no intent to sell." Id. *Page 10 
 {¶ 36} Because the Supreme Court of Ohio clearly determined that R.C. 2925.03(A)(1) and R.C. 2925.11(A) are not allied offenses of similar import, Mr. Humphrey's argument is without merit. As such, there is no error, plain or otherwise. Thus, Mr. Humphrey's first assignment of error is without merit.
 {¶ 37} In his second assignment of error, Mr. Humphrey challenges the manifest weight of the evidence. Specifically, he argues that the evidence presented that he was trafficking in marijuana and improperly handling a firearm in a motor vehicle was highly circumstantial, and thus the jury clearly lost its way in finding him guilty. We find this argument to be without merit.
 {¶ 38} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." State v. Reeds, 11th Dist. No. 2007-L-120, 2008-Ohio-1781, ¶ 87, quoting State v. Armstrong, 11th Dist. No. 2007-G-2756,2007-Ohio-6405, ¶ 15, citing State v. Pesec, 11th Dist. No. 2006-P-0084,2007-Ohio-3846, ¶ 74, citing State v. Floyd, 11th Dist. No. 2005-T-0072,2006-Ohio-4173, ¶ 8, citing State v. Martin (1983), 20 Ohio App.3d 172,175. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 39} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction." Id. at ¶ 88, quoting Armstrong at ¶ 16, citing Pesec at ¶ 75, Floyd at ¶ 9, Martin at 175. "The role of the appellate court is to engage in a limited weighing of the evidence introduced *Page 11 
at trial in order to determine whether the state appropriately carried its burden of persuasion." Id., quoting Armstrong at ¶ 16, citingPesec at ¶ 75, citing Floyd at ¶ 9, citing Thompkins at 390 (Cook, J., concurring). "The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given to the evidence and credibility of the witnesses." Id., citing Armstrong at ¶ 16,Pesec at ¶ 75, Floyd at ¶ 9, citing State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 40} Mr. Humphrey argues that the evidence presented at trial was, "at best, highly circumstantial." Thus, at the outset we must point out that "`circumstantial and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'" State v. Heiney, 11th Dist. No. 2006-P-0073, 2007-Ohio-1199, ¶ 17, quoting State v. Biros (1997), 78 Ohio St.3d 426, 447, quotingState v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 41} Specifically, Mr. Humphrey challenges the manifest weight of the evidence as to whether he owned the gun. The firearm that was found in the van matched the serial number of the gun box found in his house. Mr. Humphrey contends, however, that there was no direct evidence linking him to the gun, since R.C. was never questioned as to whether it was the same gun he personally observed in Mr. Humphrey's pocket when he first went into Mr. Grimm's house to begin the drug negotiations.
 {¶ 42} We agree with the jury's determination that the evidence introduced weighs heavily in a finding that the loaded gun belonged to Mr. Humphrey. Mr. Humphrey was arrested while he was still in the minivan. A search of the van revealed that it was carrying seven pounds of marijuana in the second row, and next to the bag, *Page 12 
behind Mr. Humphrey in the front passenger's seat, was the loaded gun. Detective Tackett testified that in his opinion the gun was fully accessible to a person sitting in the passenger seat. Mr. Gardner, the BCI I firearms examiner, testified that the gun was operable and functional, that serial numbers on guns are unique for each make and model of a particular gun, and most cogently, that the serial number on the gun matched the serial number on the gun box found in Mr. Humphrey's home.
 {¶ 43} Next, Mr. Humphrey challenges the evidence of the gun and the drugs found because the state did not test the gun, the black bag, or the one-gallon plastic bags of marijuana for fingerprints or DNA. Mr. Humphrey contends that this lack of testing can "only be viewed as a purposeful and knowing absence." The testimony and evidence of the case, however, reveals otherwise. Detective Tackett testified that BCI I does not test for fingerprints quite as frequently, preferring DNA testing, and that no DNA was found on the one-gallon bags or the black bag, which would not have been an applicable surface to fingerprint in any case. Mr. Humphrey's contention — that because of the lack of DNA found and the lack of submitting the items for fingerprinting equates to the manifest weight of the evidence weighing in his favor — is simply without merit.
 {¶ 44} Rather, our review of the evidence reveals that the manifest weight weighs heavily in supporting a finding of guilt. Mr. Humphrey was heard on R.C.'s surreptitious recording actually calculating his profit. He then agreed to the deal, left Mr. Grimm's and drove to his house to retrieve the drugs. A green minivan, driven by Mr. Raynato Smith, picked him up, at which time Mr. Grimm met the pair at Mr. Humphrey's. All three drove back in the two separate vehicles — Mr. Humphrey a passenger of Mr. Smith, and Mr. Grimm in his Cadillac. When they returned to Mr. Grimm's, where *Page 13 
Officer Adkins was waiting, presumably to purchase the marijuana, the waiting officers came onto the scene. Mr. Smith and Mr. Humphrey were arrested while they were still in the minivan. A pat-down of Mr. Humphrey revealed a small bag of marijuana, and a subsequent search of the minivan turned up the loaded gun and the black bag that contained the seven pounds of marijuana that Mr. Humphrey had left to procure. Thus, there is more than enough evidence linking Mr. Humphrey to both the marijuana and the gun, with or without DNA and fingerprints.
 {¶ 45} That Mr. Humphrey "was simply an innocent passenger, without knowledge that there was marijuana or a gun in the van" belies the tape recording of him calculating his potential profits, his subsequent journey to procure the marijuana, and the match of the serial number of the loaded gun in the van with the gun box found in Mr. Humphrey's home. This, we believe, is more than enough to conclude that the gun was Mr. Humphrey's, that he possessed the marijuana, and that he intended to sell seven pounds of it.
 {¶ 46} Mr. Humphrey presented no evidence or testimony to the contrary, and "[i]t is well-settled that when assessing the credibility of witnesses, `[t]he choice between credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute it's judgment for that of the finder of fact.'" Reeds at ¶ 92, citing Armstrong at ¶ 29, citing State v.McKinney, Jr., 11th Dist. No. 2006-L-169, 2007-Ohio-3389, ¶ 49, citingState v. Grayson, 11th Dist. No. 2006-L-153, 2007-Ohio-1772, ¶ 31, citing State v. Awan (1986), 22 Ohio St.3d 120, 123. "Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing *Page 14 
court must interpret it in a manner consistent with the verdict." Id., citing Pesec at ¶ 78 (Citations omitted).
 {¶ 47} In short, the jury was free to believe that Mr. Humphrey possessed the marijuana and that the gun belonged to him. The loaded gun that was found in the minivan, as well as the other evidence presented, overwhelmingly links him to the crime. Thus, we cannot conclude the jury so lost its way or created such a manifest miscarriage of justice that a new trial is warranted.
 {¶ 48} Mr. Humphrey's second assignment of error is without merit.
 {¶ 49} The judgment of the Trumbull County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, J., concurs, COLLEEN MARY OTOOLE, J., concurs in judgment only. *Page 1