OPINION
{¶ 1} Mr. Anthony P. Peppeard appeals from his conviction for one count of telecommunications harassment arising from a February 4, 2008 call to his ex-wife, Ms. Melissa Peppeard, in which he threatened and harassed her using quite vulgar and profane language. The court found Mr. Peppeard guilty after a one-day bench trial, in a basically "he-said/she-said" case, where the defense contradicted its own testimony. Mr. Peppeard now contends the trial court erred by finding him guilty. *Page 2 
 {¶ 2} We affirm, finding Mr. Peppeard's assignments of error to be without merit as there was more than sufficient evidence from which a trier of fact could find him guilty. The manifest weight of the evidence presented weighed heavily in support of a guilty verdict and precludes any finding of prejudice resulting from his counsel's failure to renew his Crim. R. 29 motion for acquittal at the close of trial.
 {¶ 3} Further, Mr. Peppeard opened the door to cross-examination by the state regarding his prior conviction for the same offense involving the same victim. Thus, we find no error by the court or by counsel in failing to object.
 {¶ 4} Lastly, Mr. Peppeard's sentence is clearly within the range of a first-degree misdemeanor as it is neither contrary to law nor did the court abuse its discretion. Our review indicates the court considered the relevant factors in determining the appropriate sentence in this case.
 {¶ 5} Thus, we affirm.
 {¶ 6} Ms. Peppeard filed a complaint against Mr. Peppeard for telecommunications harassment pursuant to R.C. 2917.21(B) after he called her on February 4, 2008, and threatened her using vulgar and profane language.
 {¶ 7} At trial, the state presented Ms. Peppeard as its sole witness, who testified that she and Mr. Peppeard have been divorced since the spring of 2006. She is currently employed by Coleman Professional Service as a dietary director, and has sole custody of their two children.
 {¶ 8} On February 4, 2008, while she was at work, Ms. Peppeard received a call from a private number on her cell phone from Mr. Peppeard. When asked about the nature of that call during trial, she testified: "Harassing. Thinking that I have a boyfriend; *Page 3 
that I have another man around his kids; that I'm a whore; and just arguing, threatening, telling me that if I thought he was a dick the last time we went through all of this just wait and see what he's going to do this time." She was then questioned as to Mr. Peppeard's choice of vulgar words, which included "bitch" and "whore." Most notably she testified that the conversation did not include a request for child visitation or relate to concerns for the children in any fashion.
 {¶ 9} Ms. Peppeard testified that the harassing phone calls began after Christmas of 2007 and continued until the call on February 4, 2008. She received approximately 15 calls, all made from a private number with the exception of one. Many were not conversations at all, but rather just screaming and loud music. Ms. Peppeard was able to identify Mr. Peppeard as the caller because she recognized his voice.
 {¶ 10} The court interposed a question during direct examination, asking Ms. Peppeard what notification she gave to Mr. Peppeard to stop him from making future harassing calls. She testified: "I — just recently told him if you can't call me to just talk about seeing the kids and act decent, that I would come and file charges again for him to stop. I've told him to stop." She further testified that she asked him to cease his harassing calls after "pretty much every call," and that she warned him at least five or six times.
 {¶ 11} After the court denied Mr. Peppeard's motion for acquittal pursuant to Crim. R. 29 at the close of the state's case-in-chief, Mr. Peppeard took the stand in his own defense. Mr. Peppeard testified that right after the divorce his visitations were frequent. This was followed by a period of sporadic visitation, and at the time of trial, Ms. Peppeard had refused to allow any visitations for approximately two months, since *Page 4 
Christmas of 2007. He further testified that his calls were not made to harass Ms. Peppeard, but were concerning visitations; and that he made most of those calls from his mother's house so he would "have a witness stating that I'm not doing nothing wrong."
 {¶ 12} When defense counsel asked why he felt a witness was necessary, Mr. Peppeard replied: "because of the last time I was charged with telephone harassment. They charged me twice with it. I admitted that I did it the first time. I was very upset, very bitter about the divorce. I did say some things —." Defense counsel then asked: "When was that in relation to the divorce?" Mr. Peppeard replied that "I said some things that I really should have never said to any woman. I admitted to it and I did what I had to do to take care of it. The second one was dropped because I never did it. I just want to see my kids. I don't want —." Mr. Peppeard further testified that since that time, including the February 4th call, he has made every call to his ex-wife in front of a witness. The court asked Mr. Peppeard why he was calling about a Saturday visitation on a Monday. Mr. Peppeard replied that he could not visit with the children on either Tuesday or Thursday because he works during those visitation hours.
 {¶ 13} Mr. Peppeard's mother, Mrs. Katherine Peppeard, also testified. Mrs. Peppeard testified that on February 4, Mr. Peppeard came over on his lunch break to make the call, and that she was sitting next to him on the couch when the call was made. She did not hear Mr. Peppeard use any insulting names or "inappropriateness," and stated that the parties did not even argue; rather, the content of the conversation concerned Mr. Peppeard requesting his weekend visitation. She further testified that her phone number is listed and would appear on caller ID. *Page 5 
 {¶ 14} Before reaching a verdict, the court reviewed the evidence relating to the February 4th call and found Mr. Peppeard less than candid. Both Mr. Peppeard and his mother testified that he called Ms. Peppeard from her listed home phone, yet the number appeared as "private." The court also took into consideration that Mr. Peppeard took the stand, volunteering his prior conviction, and noted the discrepancies given on direct examination that one count was dismissed because there was no basis for the charge, and his testimony on cross-examination in which he denied it was part of a plea bargain, but testified that "both were taken care of the same day."
 {¶ 15} The court concluded that based on the credibility and the veracity of the witnesses, and the weight given to the evidence and the testimony of the witnesses, Mr. Peppeard was guilty beyond a reasonable doubt of telecommunications harassment.
 {¶ 16} Mr. Peppeard was sentenced to 180 days in the Portage County Jail, of which 150 days were suspended, and with work release during his incarceration, provided he could show the court proof that he was employed. The court fined Mr. Peppeard $1,000, plus court costs, but suspended $900 of the fine because, as the court explained, "I would rather see you paying your child support * * *." The court did not impose probation on Mr. Peppeard, but warned him that if he committed a similar offense during the 150 days of his suspended sentence, he would return to jail.
 {¶ 17} Mr. Peppeard now timely appeals, raising five assignments of error:
 {¶ 18} "[1.] The Trial Court committed reversible error when it overruled Defendant-Appellant, Anthony Peppeard's Crim. R. 29 Motion to Dismiss since the State had not met its burden of showing all of the elements of the offense beyond a reasonable doubt. *Page 6 
 {¶ 19} "[2.] The Trial Court committed reversible error, when, after a bench trial, it found Defendant-Appellant, Anthony Peppeard guilty of Telecommunications Harassment in violation of R.C. 2917.21(B) beyond a reasonable doubt, when such a conviction was against the manifest weight of the evidence.
 {¶ 20} "[3.] Reversible error occurred when the State questioned Defendant-Appellant Anthony Peppeard about his prior conviction for Telecommunications Harassment, when a prior conviction of telephone harassment was not an element of the offense of Telecommunications Harassment, in violation of R.C. 2917.21(B), as Appellant was charged with, since evidence of a prior offense that was not punishable by imprisonment in excess of one year was not permitted pursuant to Evid. R. 609(A)(2).
 {¶ 21} "[4.] Defendant-Appellant, Anthony Peppeard was denied effective assistance of counsel pursuant to the test in State v.Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, andStrickland v. Washington (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052,80 L.Ed.2d 674, when Trial Counsel allowed the State to cross-examine Defendant-Appellant, Anthony Peppeard about his prior conviction of Telecommunications Harassment and failed to raise an objection.
 {¶ 22} "[5]. The Trial Court committed reversible error when it sentenced Defendant-Appellant, Anthony Peppeard to serve a sentence of one-hundred and eighty (180) days with one-hundred and fifty (150) days suspended for a first-degree misdemeanor without considering the purposes of misdemeanor sentencing pursuant to R.C. 2929.22."
 {¶ 23} In his first assignment of error, Mr. Peppeard contends that the trial court erred in overruling his motion for acquittal pursuant to Crim. R. 29 after the state rested *Page 7 
its case-in-chief. Specifically, he contends that the state failed to introduce sufficient evidence to show that his purpose in calling Ms. Peppeard was to abuse, threaten, or harass her, and instead only evidenced the effect of the call on Ms. Peppeard, not his "legitimate" purpose for the call. We find this contention to be without merit.
 {¶ 24} We note at the outset that Mr. Peppeard failed to renew his Crim. R. 29 motion at the close of the case, but in the interest of justice and as he challenges the manifest weight of the evidence, we may still decide the sufficiency issue on its merits. State v. Egli, 11th Dist. No. 2007-P-0052, 2008-Ohio-2507, ¶ 34, citing State v. Pesec, 11th Dist. No. 2006-P-0084, 2007-Ohio-3846, ¶ 44, citing City of Chardon v.Patterson, 11th Dist. No. 2006-G-2726, 2007-Ohio-1769, ¶ 11. "This is because a determination of whether a conviction is or is not supported by the weight of the evidence `necessarily rests on the existence of sufficient evidence.'" Id., citing Pesec at ¶ 44, citing State v.McCrory, 11th Dist. No. 2006-P-0017, 2006-Ohio-6348, ¶ 40.
 {¶ 25} "As this court stated in State v. Schlee (1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, 13, the standard of review for a sufficiency of the evidence claim is `whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *' (Citations omitted.) `In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *.'" State v. Reeds, 11th Dist. No. 2007-L-120, 2008-Ohio-1781, ¶ 70, quoting Pesec at ¶ 45, citingState v. Thompkins (1997), *Page 8 78 Ohio St.3d 380, 386. "Thus, sufficiency of the evidence tests the burden of production." Id., citing Pesec at ¶ 45, citing Thompkins at 390.
 {¶ 26} Mr. Peppeard argues that just because he used profanity does not mean he was calling to harass; rather, he was calling about the children, and the court erred in overlooking his intent in making the phone call. Thus, he argues that the state failed to prove he purposely called Ms. Peppeard solely to harass her, and that he had a legitimate purpose in making the call.
 {¶ 27} R.C. 2917.21(B) provides: "[n]o person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."
 {¶ 28} During the call in question Mr. Peppeard accused Ms. Peppeard of being with other men, and that she was a "bitch" and a "whore." Mr. Peppeard contends that Ms. Peppeard admitted the call was in regard to the children. This contention is without merit as we find no such admission as to any purpose aside from harassment.
 {¶ 29} We fail to see how a phone call during which Mr. Peppeard accused the mother of his children of unfounded allegations, and swore at her in a vulgar manner, could be anything but a phone call that was meant to "annoy, threaten, or harass." At the very least, it was harassing to call Ms. Peppeard while she was at work in order to threaten her with unfounded accusations and call her names.
 {¶ 30} Thus, the state introduced sufficient evidence from which a trier of fact could find that Mr. Peppeard's purpose was solely to disturb Ms. Peppeard. Indeed, Ms. Peppeard testified that in the previous two months, starting shortly after Christmas *Page 9 
until the February 4th call, she received over 15 harassing calls from Mr. Peppeard. Some of the calls were simply a person screaming with loud music, but she was able to identify Mr. Peppeard by the sound of his voice. In the other calls, where Mr. Peppeard did identify himself, he used vulgar and threatening language, with no purpose other than to harass her. Ms. Peppeard warned him to stop at least five or six times.
 {¶ 31} Mr. Peppeard cites to a Seventh District Appellate Court decision, State v. Patel, 7th Dist. No. 03 BE 41, 2004-Ohio-1553, in support of his proposition that his purpose, although vulgar, was legitimate, as his main concern was the children, specifically whether she had other men present around them. In Patel, the court reversed the trial court's conviction because the caller's intention, although conveyed in a profane and vulgar way, was not to harass but to advise his employee that he could continue to work for him if he stopped bothering the other employees. Further, the court found the victim's testimony not credible. Thus, under a manifest weight of the evidence standard and argument, the court reversed, finding the intent of the caller was not to harass or threaten, but rather the caller had a legitimate purpose in calling the "victim." Id. at ¶ 46-48.
 {¶ 32} Similarly, Mr. Peppeard cites to State v. Lucas, 7th Dist. No. 05 BE 10, 2005-Ohio-6786 for the proposition that in order "to find Appellant guilty of telephone harassment, it must be found that Appellant made the telephone calls with the intent to abuse, threaten, or harass as set forth in R.C. 2917.21(B)." Once again, this argument goes to the manifest weight of the evidence. The court in Lucas affirmed the appellant's conviction, finding as we do in this case, that the state presented sufficient evidence *Page 10 
from which one could find that the intent was solely to abuse, threaten, and/or harass. Id. at ¶ 18. Thus, Lucas does not support Mr. Peppeard's argument.
 {¶ 33} Solely based on the facts and circumstances in this case, we find that the state introduced sufficient evidence of Mr. Peppeard's intent in that the state presented testimony that Mr. Peppeard, who was already under a no contact order except for visitation purposes, called Ms. Peppeard and made unfounded accusations using vulgar language. No mention was made as to visitation or an inquiry as to the children's well-being. Thus, there can be no other conclusion that the main and sole purpose of the call was to threaten Ms. Peppeard and warn her that she better not have other men around his children. Although Mr. Peppeard argues that there was a legitimate purpose to his call, this argument will be addressed in his second assignment of error, where he challenges the manifest weight of the evidence.
 {¶ 34} We cannot substitute our judgment regarding the credibility of the witnesses for the judgment of the trier of fact. As the state presented sufficient evidence of Mr. Peppeard's intent through the direct testimony of Ms. Peppeard, Mr. Peppeard's first assignment of error is without merit.
 {¶ 35} Mr. Peppeard makes the same argument in his second assignment of error, albeit, more properly under a manifest weight claim, as he again argues that the evidence presented failed to show that his purpose was to abuse, threaten, or harass another pursuant to R.C. 2917.21(B). Specifically, Mr. Peppeard argues that the court did not consider the "intent" of his call because he had a "legitimate" purpose in calling Ms. Peppeard. *Page 11 
 {¶ 36} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." Reeds at ¶ 87, quoting State v. Armstrong, 11th Dist. No. 2007-G-2756, 2007-Ohio-6405, ¶ 15, citing Pesec at ¶ 74, citingState v. Floyd, 11th Dist. No. 2005-T-0072, 2006-Ohio-4173, ¶ 8, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,Thompkins at 387.
 {¶ 37} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction." Id. at ¶ 88, citing Armstrong at ¶ 16, citing Pesec at ¶ 75, Floyd at ¶ 9, Martin at ¶ 175. "The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried out its burden of persuasion." Id., citingArmstrong at ¶ 16, citing Pesec at ¶ 75, citing Floyd at ¶ 9, citingThompkins at 390 (Cook, J., concurring). "The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given to the evidence and credibility of witnesses." Id., citingArmstrong at ¶ 16, citing Pesec at ¶ 75, citing Floyd at ¶ 9, citingState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 38} Specifically, Mr. Peppeard argues that based on his testimony and his mother's, the court clearly lost its way in that he testified that his purpose was to arrange a visitation with the children on that Saturday. He further argues that his mother corroborated his version of the call in that she was present for the call, as she *Page 12 
testified that he made the call from her home during his lunch hour, and that she heard no profanity in the alleged visitation discussion.
 {¶ 39} We agree with the trial court that Mr. Peppeard's testimony was less than credible. His mother did not corroborate his story in so far as she testified that her phone has a listed number, and the call Ms. Peppeard received was displayed as a "private" number. Thus, this case turns on a "he said/she said" testimony of the events, and the trier of fact found Ms. Peppeard to be the more credible witness.
 {¶ 40} "It is well-settled that when assessing the credibility of witnesses, `[t]he choice between credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" Reeds at ¶ 92, quoting Armstrong at ¶ 29, citingState v. McKinney, Jr., 11th Dist. No. 2006-L-169, 2007-Ohio-3389, ¶ 49, citing State v. Grayson, 11th Dist. No. 2006-L-153,2007-Ohio-1772, ¶ 31, citing State v. Awan (1986), 22 Ohio St.3d 120,123. "Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." Id., quoting Pesec at ¶ 78. (Citations omitted.)
 {¶ 41} Based on the evidence presented by the state, and the conflicting, contradictory evidence presented by the defense, we cannot conclude that the court so lost its way or created a manifest miscarriage of justice. Indeed, Mr. Peppeard's own defense contradicted his testimony. Mr. Peppeard presented no evidence supporting a legitimate purpose for his call and the evidence he did present in his defense was simply not credible. *Page 13 
 {¶ 42} "Moreover, in a criminal bench trial, a reviewing court will not reverse a conviction `where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.'" State v. Taylor, 11th Dist. No. 2008-A-0007, 2008-Ohio-4670, ¶ 15, quoting Grayson at 31.
 {¶ 43} Our review of the evidence reveals that the manifest weight of the evidence weighs heavily in a finding of guilt. Accordingly, Mr. Peppeard's second assignment of error is without merit.
 {¶ 44} In his third assignment of error, Mr. Peppeard contends that the trial court committed reversible error in allowing the state to cross-examine him in regard to his prior conviction for telecommunications harassment, as it was a misdemeanor offense, not punishable by imprisonment in excess of one year, and thus, not permitted pursuant to Evid. R. 609(A)(2). We find this contention to be without merit, as Mr. Peppeard opened the door on direct examination by offering testimony regarding the prior conviction and the state briefly cross-examined Mr. Peppeard on the prior conviction in order to impeach under Evid. R. 608.
 {¶ 45} "The trial court has `broad discretion in the admission and exclusion of evidence.'" State v. Bentley, 11th Dist. No. 2004-P-0053,2005-Ohio-4648, ¶ 19, citing State v. Hymore (1967), 9 Ohio St.2d 122,128. Thus, we "`shall not disturb evidentiary rulings absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.'" Id., citing State v.Adams (1980), 62 Ohio St.2d 151, 157. Moreover, in a bench trial, "there is a presumption that the trial judge `considered *Page 14 
only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" Jackson v.Herron, 11th Dist. No. 2003-L-145, 2005-Ohio-4046, ¶ 28, citingState v. White (1968), 15 Ohio St.2d 146, 151; Columbus v. Guthmann
(1963), 175 Ohio St. 282, paragraph three of the syllabus.
 {¶ 46} Mr. Peppeard argues that the state's cross-examination of his prior conviction for telecommunications harassment, in which Ms. Peppeard was also the victim, constituted reversible error pursuant to Evid. R. 609(A)(2).
 {¶ 47} Evid. R. 609, Impeachment by Evidence of Conviction of Crime, states in relevant part:
 {¶ 48} "(A)(2) Notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 49} Mr. Peppeard correctly argues the effect of the rule, but when he offered such evidence of conviction during his direct testimony, the state was allowed a limited cross-examination to clarify Mr. Peppeard's statements. Mr. Peppeard testified that he was charged with two counts of telephone harassment and that he pled guilty to one count because he was guilty, but that the second charge was dropped because "he never did it." On cross-examination, he denied that the dismissal was part of a plea bargain, but admitted that both charges "were taken care of the same day." *Page 15 
 {¶ 50} In a similar case, State v. Mitchell, 5th Dist. No. CT2006-0090, 2007-Ohio-5519, where the appellant also volunteered his previous conviction of a misdemeanor offense, the court explained that "[w]hile Evid. R. 609 clearly does not permit the use of a misdemeanor conviction to impeach the accused, Evid. R. 608, in certain circumstances, does." Id. at ¶ 50. Thus, Evid. R. 608, which concerns character and witness conduct, provides in relevant part: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court,if clearly probative of truthfulness or untruthfulness, be inquired intoon cross-examination of the witness * * * concerning the witness'scharacter for truthfulness or untruthfulness * * *." (Emphasis added.) Id. at ¶ 51, quoting Evid. R. 608(B). See, also, State v. Greer,39 Ohio St.3d 236. As in Mitchell, Mr. Peppeard opened the door to this line of inquiry, and now can "hardly complain about the prosecution's use of similar information to rebut his attempts to bolster his credibility * * *." Id. at ¶ 53.
 {¶ 51} Thus, the normal "limiting rules do not apply where the defendant `opens the door,' or tends to mislead the jury by his direct testimony." State v. McKnight, 8th Dist. No. 62808, 1993 Ohio App. LEXIS 2812, 5. "In other words, the defense may have opened the door to a subject that might have been improper otherwise." Id. (Citations omitted.) See, also, State v. Brooks, 9th Dist. No. 07 CA 0111-M,2008-Ohio-3723, ¶ 53 ("[C]ourts will not find prejudicial error when the defense `opens the door' to such evidence."); State v. Clemence, 8th Dist. No. 81845, 2003-Ohio-3660, ¶ 12 ("[W]e *Page 16 
find that the defendant opened the door to questions on cross-examination regarding past incidents of domestic violence by the defendant against the victim.").
 {¶ 52} Moreover, defendant's counsel did not object to this cross-examination. "Under the `invited error' doctrine, `a party is not entitled to take advantage of an error that he himself invited or induced.'" State v. Miller, 11th Dist. No. 2004-P-0049, 2005-Ohio-6708, ¶ 47, citing State ex rel. Kline v. Carroll, 96 Ohio St.3d 404,2002-Ohio-4849, ¶ 27.
 {¶ 53} Thus, even if we did find this limited cross-examination to be in error, which we do not, the cross-examination would still have to survive a plain error analysis, where "there must be an error or deviation from a legal rule" where the error is clearly an "obvious defect in trial proceedings; and it must have affected substantial rights of the defendant." Id. at ¶ 49, citing State v. Barnes (2002),94 Ohio St.3d 21, 27.
 {¶ 54} "Furthermore, because this was a bench trial, it is presumed that the court will only consider admissible evidence." Pesec at ¶ 27. "The trial court, sitting as judge and jury, is afforded great latitude in permitting incompetent or inadmissible evidence." Id., quotingState v. Rock (Dec. 20, 1991), 11th Dist. No. 91-A-1582, 1991 Ohio App. LEXIS 6247, 13.
 {¶ 55} In conclusion, we cannot find that the state was improper in following up on information Mr. Peppeard volunteered. It was limited in scope and clarified that he faced two charges of telecommunications harassment against Ms. Peppeard, that one charge was dropped, and that while Mr. Peppeard denied it was due to a plea bargain, both charges were taken care of on the same day.
 {¶ 56} Mr. Peppeard's third assignment of error is without merit. *Page 17 
 {¶ 57} In his fourth assignment of error, Mr. Peppeard contends that he was deprived the effective assistance of counsel because his counsel failed to object to the state's cross-examination as to his prior conviction. We find this argument to be without merit, because as we noted above, it was Mr. Peppeard who opened the door to the limited cross-examination and thus, even if counsel had objected, it would have been futile. Moreover, the admission of the prior conviction did not prejudice Mr. Peppeard's case in that but for the admission on direct and follow-up cross-examination, the result would have been otherwise, as the court's guilty verdict rested ultimately on its finding that Mr. Peppeard was not a credible witness.
 {¶ 58} "`[W]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' * * * The [Supreme Court of Ohio] recognized that there are `(* * *) countless ways to provide effective assistance in any given case.'" State v.Vinson, 11th Dist. No. 2006-L-238, 2007-Ohio-5199, ¶ 29, quotingState v. Allen (Sept. 22, 2000), 11th Dist. No. 99-A-0050, 2000 Ohio App. LEXIS 4356, 10, citing State v. Bradley (1989), 42 Ohio St.3d 136,142, quoting Strickland v. Washington (1984), 466 U.S. 668, 687-689. "Therefore, the court stated `judicial scrutiny of counsel's performance must be highly deferential. (* * *)'" Id.
 {¶ 59} "`[B]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (* * *).' Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice *Page 18 
arises from counsel's performance." Id. at ¶ 30, quoting Allen at 10. (Parallel citations omitted.) Thus, "[t]o warrant reversal, `the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' * * *" Id., quoting Allen at 10-11, citing Bradley at 142, quoting Strickland at 694.
 {¶ 60} Mr. Peppeard argues that the failure of defense counsel to object to the limited cross-examination as to his prior conviction, which he, himself, volunteered, was so prejudicial that it resulted in a fundamentally unfair outcome. He argues that this prejudice is evident in a statement the court made prior to declaring its verdict. Specifically, Mr. Peppeard takes issue with the court's statement, as quoted from his brief: "The court also has record of the fact that there is a conviction of one charge and a dismissal of another charge on exactly the same date, dismissed on the motion of the prosecutor. * * *. As a result, and based on the fact that it is the Court who determines the credibility and veracity of the witnesses, I do in fact find the Defendant guilty beyond a reasonable doubt of the charge of Telecommunications Harassment."
 {¶ 61} Mr. Peppeard takes this statement out of context and most notably omits crucial portions of this statement.
 {¶ 62} The court's complete statement in declaring its guilty verdict is as follows:
 {¶ 63} "Thank you. Well, having heard the evidence and given the fact that the complaint specifically references February 4th, 2008, we have an admission to the fact that the mother's telephone was used. However, that comes up as private. We have *Page 19 
an admission to the fact that a phone call was made but supposedly only discussion about the children ensued.
 {¶ 64} "I find that certainly — I believe that the Defendant is less than candid in this matter. The Defendant took the stand and admitted that he has previously engaged in this conduct. The court also has record of the fact that there was conviction of on one charge and a dismissal of another charge on exactly the same date, dismissed on the motion of the prosecutor.
 {¶ 65} "As a result, and based on the fact that it is the Court who determines the credibility and the veracity of the witnesses and the weight to be given to the evidence and the weight given to the testimony of the witnesses, I do in fact find the Defendant guilty beyond a reasonable doubt of the charge of Telecommunications Harassment, and at this time I would ask if the State has a recommendation for sentencing."
 {¶ 66} Thus, the court determined that Mr. Peppeard was simply not credible. The point of raising his prior convictions was that Mr. Peppeard opened the door voluntarily on direct examination, but then did not correctly portray his prior charges, as was brought out by the state.
 {¶ 67} As we determined in his third assignment of error, the state's cross-examination on this testimony was not in error because Mr. Peppeard volunteered the information. His defense strategy was that he had a witness every time he called Ms. Peppeard. When asked why, he could have stated numerous reasons, such as paranoia that this exact situation would happen. Instead, he volunteered it was due to his prior conviction, further stating that he was guilty of one and not guilty of the other, *Page 20 
which is not, quite simply, what really happened. Thus, this goes to the truthfulness of his testimony and his credibility as a witness.
 {¶ 68} Even aside from the admission of his prior conviction, Mr. Peppeard cannot prove that but for this admission he would not be found guilty, as the crucial discrepancies between his testimony and his mother's centered around the February 4th phone call, which goes to the heart of his conviction in this case.
 {¶ 69} First, as we previously determined, the state's limited cross-examination was not improper, thus counsel was not ineffective for failing to object. Second, as the Ninth Appellate District Court noted in Brooks, "[appellant's] decision not to object to this testimony was a trial tactic." Id. at ¶ 42. As we have held in numerous cases: "`[s]trategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him.'" Thus, "[e]rrors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." Vinson, Jr. at ¶ 31, quoting Allen at 11. (Citations omitted.)
 {¶ 70} Furthermore, as we noted above, "because this was a bench trial, it is presumed that the court will only consider admissible evidence. * * * [T]he trial court, sitting as judge and jury, is afforded greater latitude in permitting incompetent or inadmissible evidence."Pesec at ¶ 27, quoting Rock at 13.
 {¶ 71} Mr. Peppeard's fourth assignment of error is without merit.
 {¶ 72} In his final assignment of error, Mr. Peppeard contends that the trial court committed reversible error in failing to consider the purposes of misdemeanor sentencing pursuant to R.C. 2929.22. Thus, he argues that the trial court abused its discretion because it did not consider the statutory factors. We find this contention to be *Page 21 
without merit, as Mr. Peppeard was sentenced within the applicable range of a first-degree misdemeanor, and further, has pointed to no evidence in support of his contention that the trial court did not consider the relevant statutory factors of R.C. 2929.22.
 {¶ 73} "Misdemeanor sentencing is within the discretion of the trial court and a sentence will not be disturbed absent an abuse of discretion." City of Conneaut v. Peaspanen, 11th Dist. No. 2004-A-0053,2005-Ohio-4658, ¶ 18, citing State v. Wagner (1992), 80 Ohio App.3d 88,95-96. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Id., citing State v. Joseph (1996),109 Ohio App.3d 880, 882. "When reviewing a sentence an appellate court should be guided by the presumption that the trial court's findings were correct." Id., citing In re Slusser (2000), 140 Ohio App.3d 480, 487. "When a misdemeanor sentence is within the statutory limits, the trial court is presumed to have considered the required factors, absent a showing to the contrary by the defendant." Id., citing State v.Frazier, 158 Ohio App.3d 407, 2004-Ohio-4506, ¶ 15.
 {¶ 74} "In imposing a sentence in a misdemeanor case, the trial court must consider the factors set forth in R.C. 2929.22. Those factors include: the nature and circumstances of the offense; whether the offender has a history of criminal history and likelihood of committing another offense; whether there is a substantial risk that the offender will be a danger to others; if the offender's conduct `has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;' and if some factor (i.e. age, disability) made the victim vulnerable to the offense." Id. at ¶ 19, citing R.C. 2929.22(B)(1). *Page 22 
 {¶ 75} "According to R.C. 2929.22, the trial court must consider the criteria listed in the statute before sentencing someone convicted of a misdemeanor. Failure to consider the sentencing criteria is an abuse of discretion; but when the sentence is within the statutory limit, a reviewing court will presume that the trial judge followed the standards in the statute, absent a showing otherwise." Id. at ¶ 26, citingWagner at 95-96. "Failing to explain the statutory reasons behind a certain sentence is only fatal if there are mitigating factors without any aggravating factors given at the sentencing hearing." Id., citingState v. Flors (1987), 38 Ohio App.3d 133, 140. "A silent record raises the presumption that the trial court considered all of the factors * * *." Id., citing State v. Fincher (1991), 76 Ohio App.3d 721, 727.
 {¶ 76} Mr. Peppeard was convicted of telecommunications harassment, in violation of R.C. 2917.21(B), which is a first-degree misdemeanor for a first offense. See R.C. 2917.21(C)(2). Pursuant to R.C. 2929.24(A)(1), the maximum sentence for a first-degree misdemeanor is 180 days.
 {¶ 77} Mr. Peppeard was sentenced to a jail term of 180 days, with 150 days suspended, as well as fined $1,000 plus court costs, with $900 of the fine suspended, as long as (1) Mr. Peppeard reported to jail on April 22, 2008 at 9:00 a.m.; (2) Mr. Peppeard participates in the anger management program while in jail; (3) Mr. Peppeard commits no similar violation of the law for two years, and has 90 days to pay the unsuspended portion of the fine and court costs; and (4) Mr. Peppeard have no contact with Ms. Peppeard except pursuant to the visitation order of the domestic relations court. *Page 23 
 {¶ 78} The sentencing entry is silent as to the consideration of the factors enumerated in R.C. 2929.22(B), but "where the maximum sentence imposed for a misdemeanor was not clearly inappropriate to the seriousness of the offense, and the record is silent, we must presume the trial court considered the proper factors enumerated in R.C. 2929.22. While it is preferable, there is no requirement that a trial court state on the record it considered the statutory criteria or discuss them. Rather, a silent record raises the presumption that the trial court correctly considered the appropriate sentencing criteria."Peaspanen at ¶ 29.
 {¶ 79} A review of the sentencing hearing, which directly followed Mr. Peppeard's conviction, reveals the court asked the state and the defense if they wished to be heard. The court took both arguments into account and sentenced Mr. Peppeard to 180 days, suspending 150 days of the sentence, noting that Mr. Peppeard was lucky this was not charged as a felony pursuant to R.C. 2917.21(C)(2), since a second offense of telecommunications harassment is a felony of the fifth degree. As for the 30-day sentence, the court considered Mr. Peppeard's argument that he was starting a new job the following day, and told him that it would consider a work release if he gave the court his employment information immediately. Further, the court suspended $900 of the $1000 fine, because, as the court stated: "* * * I would rather see you paying your child support which I certainly hope you're going to do in lieu of paying the $900.00 fine."
 {¶ 80} Mr. Peppeard contends that "there is no evidence on the record that the court considered any factors, or used any guidance" when it sentenced him. We disagree. The court did not specifically enumerate the factors of R.C. 2929.22 verbatim *Page 24 
either in its sentencing entry or at the sentencing hearing, but a review of the hearing reveals they were clearly considered in determining his sentence.
 {¶ 81} During the sentencing hearing, the court clearly considered these factors as they applied to the present case, as it stated in its conclusion: "I'm not going to order probation, but I will tell you that I am going to order no similar offenses for a period of two years. Let me make it very clear to you, Mr. Peppeard, you violate that term — specifically, you have any similar offense, I have 150 days hanging over your head, number one. Number two: You will serve every day of those 150 days if I am made aware of the fact that you are continuing this behavior. This behavior is not only inappropriate, it's a crime. It certainly isn't making any headway for you in terms of having a decent relationship with your children so obviously you have 30 days in which to appeal this order. * * *." The court also told the parties they should go back to the domestic relations court to ask the court to further delineate their order to resolve the visitation issue, noting that the domestic relations court had already ordered no contact other than for purposes of visitation, and thus the trial court was without the jurisdiction to do so.
 {¶ 82} Indeed, Mr. Peppeard points to no factor that was not considered or how this sentence is an abuse of discretion when it clearly falls within the range of a first-degree misdemeanor. Further, Mr. Peppeard offered no mitigating factors during the sentencing hearing, except that a 30-day sentence would hurt his new employment. The court gave due consideration to this concern and told Mr. Peppeard the court would consider work release upon proof of employment.
 {¶ 83} Mr. Peppeard's fifth assignment of error is without merit. *Page 25 
 {¶ 84} The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
DIANE V. GRENDELL, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents with Dissenting Opinion.