[Cite as *State v. Corradetti*, 2022-Ohio-1279.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

      Plaintiff-Appellee

- v -

BERNARD CORRADETTI,

      Defendant-Appellant.

**CASE NO. 2021-L-079**

Criminal Appeal from the
Willoughby Municipal Court

Trial Court No. 2020 CRB 00590

**O P I N I O N**

Decided: April 18, 2022
Judgment: Affirmed

*Scott J. Zele*, City of Wickliffe Prosecutor, 38106 Third Street, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Jamie R. Eck*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}   Appellant, Bernard Corradetti ("Mr. Corradetti"), appeals from the judgment of the Willoughby Municipal Court that sentenced him to the maximum 60-day jail term for a third-degree misdemeanor after a jury found him guilty on one count of voyeurism, in violation of R.C. 2907.08(A).

{¶2}   Mr. Corradetti raises three assignments of error on appeal, contending that the state failed to produce sufficient evidence on the elements of the offense charged, specifically as to "surreptitiously invading the privacy of another."  He also asserts that the manifest weight of the evidence does not support his conviction and that the trial court

failed to consider the purposes of misdemeanor sentencing pursuant to R.C. 2929.21 and the factors to consider pursuant to R.C. 2929.22.

{¶3} After a thorough review of the record and relevant caselaw, we find Mr. Corradetti's assignments of error are without merit. The state introduced more than sufficient evidence from which a jury could find that Mr. Corradetti "surreptitiously invaded the privacy" of others by way of the victims' testimony and the testimony of the investigative officer. The jury also considered the note Mr. Corradetti slipped under the hotel room door to the victims. The note, containing his phone number, informed them that he watched them engage in intercourse and asked to do it again. Finally, the jury considered photographs of the scene and a recording of a telephone call between Mr. Corradetti and the investigative officer posing as one of the victims.

{¶4} Similarly, the manifest weight of the evidence more than supports the jury's verdict. Evidence that Mr. Corradetti stood between the shrub line and a hotel window, peeping through curtains that were only slightly ajar without permission of the occupants, who were engaged in sexual relations, supports the jury's finding that Mr. Corradetti "surreptitiously invaded the privacy" of others.

{¶5} Lastly, the trial court explicitly stated that it considered the principles of misdemeanor sentencing pursuant to R.C. 2929.21 and the factors pursuant to R.C. 2929.22 and imposed the maximum 60-day sentence after reviewing Mr. Corradetti's past failed rehabilitation efforts and his lengthy history of convictions, including six prior sex offenses, one of which occurred while this case was pending. Mr. Corradetti failed to affirmatively demonstrate that the trial court did not consider the purposes and factors of misdemeanor sentencing in this case.

{¶6} The judgment of the Willoughby Municipal Court is affirmed.

**Substantive and Procedural Facts**

{¶7} In March 2020, the state filed a complaint in the Willoughby Municipal Court charging Mr. Corradetti with one count of voyeurism, a third-degree misdemeanor, in violation of R.C. 2907.08(A).

{¶8} The charge resulted from an incident in which Mr. Corradetti watched a couple through a window of a hotel room. He slid a note under the door propositioning to "watch" the couple again and left his phone number. After the couple reported the incident to the police, Mr. Corradetti was arrested. While this case was pending and Mr. Corradetti was out on bond, he was charged in a second case with another count of voyeurism in a substantially similar incident at the same hotel.

{¶9} At a pretrial, Mr. Corradetti changed his plea to guilty, which the court accepted and then deferred the matter for sentencing. At the sentencing hearing, prior to the sentence being imposed, Mr. Corradetti moved the court to withdraw his plea, arguing that his attorney did not inform him that a conviction would result in an elevation in the tier of his sex offender registry from a Tier II to a Tier III sex offender. The court explained that due to Mr. Corradetti's prior convictions, his status was elevated by operation of law. The court granted Mr. Corradetti's motion, and set the matter for a jury trial.

{¶10} The case proceeded to a one-day jury trial. The state presented three witnesses: the victim couple ("C.G." and "G.N."), and Patrolman Kevin Ankuda, a Wickliffe Police Department Officer ("Officer Ankuda").

3

Case No. 2021-L-079

{¶11} C.G. testified that he resided in Marion, Ohio, and that his girlfriend, G.N. lived Shaker Heights, Ohio. For Valentine's Day, the couple decided to get a hotel room. He described the window coverings as "old-fashioned" and "slightly ajar" with a 4 to 5-inch gap. They checked into the room around 11:00 p.m. and after a while engaged in sexual relations. C.G. was not aware anyone was watching them, did not invite anyone to watch them, and testified that he would have been angry if he had known someone was watching. G.N. woke him up around 4:00 a.m. because she saw a note slipped under the door. C.G. read the note for the jury, which stated, "Hi, smiley face. Any chance I can watch again? I'll even pay for the room or whatever. Thank you. Smiley face, and then a room number." He observed that G.N. was terrified and very uncomfortable. C.G. felt upset that his privacy was invaded.

{¶12} C.G. and G.N. went to the receptionist and inquired if there were cameras in the hallway. After the receptionist informed them there were no cameras in the hallways, they called the police from the lobby since they were afraid to be in the room. Officer Ankuda arrived on the scene and investigated the parking lot, the shrubs outside near the window, and the hotel room. C.G. informed him they wanted to press charges.

{¶13} G.N. similarly testified that she was not aware anyone was watching them and that she did not invite anyone to watch them. They chose a hotel room specifically for privacy because she lived with her parents. They did not pass anyone in the hotel hallway, and she would have felt very uncomfortable if she had known someone was watching. She woke up between 3:00 and 4:00 a.m. and saw the note slipped under the door. After she read the note, she felt "shocked," "upset," and "scared." She did not see the author of the note or give him permission to watch her, nor did she know that the

4

person was watching her. She woke up C.G. and observed that he appeared upset and angry.

{¶14} Officer Ankuda testified that he received a report for a "peeping Tom" and responded to the scene, meeting with the two victims in the lobby. He described the hotel room for the jury, explaining that the victims were in Room 260, which was on the ground floor and was "just a regular size hotel room." He noticed the window had two different coverings - a sheer transparent set and an opaque set - commonly referred to as "privacy blinds," which were partially closed. He explained that it was "easier to see outside [the window] to inside. Like even when I went, I was surprised how easy it was to see inside. When you're inside, you have the sheer blinds and then you have the window, the light bouncing off the window. So you see your reflection. You're not seeing the parking lot unless you like really get up close to the window. You're seeing sheer blinds and if you're standing by the window, you can see your reflection."

{¶15} Officer Ankuda also investigated outside the hotel room, noting there was snow on the ground. The parking lot was directly in front of the hotel room, with mostly handicapped spots so "not many people park there." The only place he found footprints that went off the sidewalk was directly in front of the victims' room. "It looked like somebody was standing there for awhile and like either shoveling or moving around." There were also three cigarette butts outside the window, indicating the person was there for a bit of time, and two more located nearby in the parking lot. There were footprints between the shrubbery and the window, which had only a "foot or so" of space between them. "If you're on the other side of the shrubs, you're basically almost right up against

5

the window." Officer Ankuda explained the photographs he took, which, along with Mr. Corradetti's note, were admitted into evidence.

{¶16} Officer Ankuda explained he identified Mr. Corradetti after running the phone number through LEADS (Law Enforcement Automated Data System) and identified Mr. Corradetti to the jury. In a recorded call, he called the phone number to pose as one of the victims, and a man answered. Acting like the person who received the note, he told Mr. Corradetti that "it kind of creeps me out." Mr. Corradetti told him there were several different hotels they could go to and that he did not want to go to the same hotel because he did not want to get caught "watching" people. He further told the officer that he would buy the hotel room, and when the officer seemed unsure, he told him that he made homemade wine or liquor and could supply them with it. Officer Ankuda told Mr. Corradetti he would think about it and hung up the phone. The recorded phone conversation was played for the jury.

{¶17} After the state rested, defense counsel made a Crim.R. 29 motion for acquittal, which the court denied. The defense then rested and renewed the Crim.R.29 motion, which the court also denied.

{¶18} The jury found Mr. Corradetti guilty on one count of voyeurism, and the court deferred the matter for a sentencing hearing.

{¶19} At the sentencing hearing, the trial court also accepted Mr. Corradetti's plea of guilty to one count of voyeurism, a third-degree misdemeanor, in violation of R.C. 2907.08(A), in case no. 21-CRB-00592, the second incident that occurred while the instant case was pending. After addressing the guilty plea in that case and advising Mr.

6

Corradetti on his Tier III sex offender status, the court proceeded to sentence Mr. Corradetti on both convictions.

{¶20} Defense counsel requested community control sanctions, contending that the Tier III sex offender requirements were punitive enough and that rehabilitation was necessary given Mr. Corradetti's sex addiction, supported by a letter from his sex offender/treatment counselor. Defense counsel also noted that Mr. Corradetti has his own landscaping business. Mr. Corradetti spoke on his own behalf, explaining that his sex addiction and his latest "binge" were due to the fact that he was molested as a child and that he stopped going to counseling after his mother died and due to the COVID epidemic.

{¶21} The trial court reviewed Mr. Corradetti's extensive criminal history, which dated back to 1980, which included six convictions for sexually oriented offenses, including unlawful sexual conduct with a minor, and at least ten cases where he was sentenced to a term in prison. In addition, he violated the terms of his bond in this case and his judicial release. The court considered his counseling, noting that there has been a failure of rehabilitation since he was unable to follow the rules of probation and bond, and that his former Tier II sex offender status did nothing to prevent him from committing additional sex offenses.

{¶22} The court explicitly stated that it considered the misdemeanor principles of sentencing pursuant to R.C. 2929.21 and the factors pursuant to R.C. 2929.22. After finding that Mr. Corradetti was not amenable to a community control sanction and that his sanctions for prior sentences demonstrated the imposition of the longest jail term was necessary, the trial court sentenced Mr. Corradetti to a maximum 60-day jail sentence for

7

a third-degree misdemeanor in this case and a maximum 60-day jail sentence in 21-CRB-00592.

{¶23} The court ordered the sentences to be served consecutively to each other, finding that consecutive sentences were necessary to prevent Mr. Corradetti from committing future crime and to protect the public. The trial court also found that the 21-CRB-00592 case occurred while this case was pending and that the facts and circumstances of that crime, with the exception of the victims, were substantially similar.

{¶24} Mr. Corradetti raises three assignments of error on appeal:

{¶25} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

{¶26} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶27} "[3.] The trial court committed an abuse of discretion when it imposed a maximum sentence of 60-days in jail."

## Sufficiency of the Evidence

{¶28} In his first assignment of error, Mr. Corradetti contends the state failed to introduce sufficient evidence to establish beyond a reasonable doubt the elements of the offense charged, specifically the element of "surreptitiously invading the privacy of another."

{¶29} ""Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th

8

Ed.1990). The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id.* at 273. Whether the evidence is legally sufficient is a question of law. *Thompkins* at 386.

{¶30} The state was required to produce sufficient evidence on each element of the offense of voyeurism, in violation of R.C. 2907.08(A), which provides: "[n]o person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another, to spy or eavesdrop upon another."

{¶31} "Surreptitious" is defined in Black's Law Dictionary as "(Of conduct) unauthorized and clandestine; done by stealth and without legitimate authority." *Black's Law Dictionary*, surreptitious (11th Ed.2019).

{¶32} With these standards in mind, we conclude that the state introduced legally sufficient evidence to support Mr. Corradetti's voyeurism conviction, including the element of "surreptitiously invading the privacy of another." Both victims testified that they had reserved a hotel room for privacy and that they were unaware someone was watching them. Footprints were found in the snow in the one-foot space between the window and the shrubs, which Officer Ankuda testified would have put a person directly against the window of a hotel room that had curtains drawn together with only a few-inch gap. Mr.

9

Case No. 2021-L-079

Corradetti then slipped a note by which he informed the couple that he had watched them, propositioned them further, and left his phone number.

{¶33} The victims' testimony and that of the investigative officer was supported by the note Mr. Corradetti slipped under the victims' hotel room door, photographs of the scene, and a recording of a telephone call between Mr. Corradetti and the officer posing as one of the victims in which Mr. Corradetti admitted his actions.

{¶34} Surely, evidence of Mr. Corradetti peeping into a hotel window with curtains that are only slightly ajar without permission while the occupants who are engaged in sexual relations are unaware of his presence is sufficient evidence of surreptitious behavior or "unauthorized and clandestine" conduct "done by stealth and without legitimate authority." *See State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 20 (Evidence that the appellant committed a number of acts while the victim was sleeping and unaware was sufficient to meet the "surreptitiously invade the privacy of another" element.)

{¶35} Mr. Corradetti's first assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶36} In his second assignment of error, Mr. Corradetti contends that his conviction is against the manifest weight of the evidence and unsupported by competent, credible evidence that proved his guilt beyond a reasonable doubt. Specifically, he contends the manifest weight of the evidence does not support a finding that he was surreptitiously invading the couple's privacy because the privacy curtains were not closed, the lights were on in the hotel room, the couple used the bed closest to the window, and Officer Ankuda testified that the shrubs were between chest and belly button high.

10

Further, he did not hide himself from the couple but stood there watching them openly for approximately 30 to 45 minutes through a 4 to 5-inch gap in the curtains while standing directly outside their window.

{¶37} When reviewing whether a conviction is against the manifest weight of the evidence, we must "examine whether the evidence produced at trial 'attains the high degree of probative force and certainty required of a criminal conviction.'" *State v. Tibbetts*, 92 Ohio St.3d 146, 163, 749 N.E.2d 226 (2001), quoting *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998). In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* "'Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis deleted.) *Thompkins*, *supra*, at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶38} As our review of the evidence indicated, there was more than enough evidence to support the jury's verdict that Mr. Corradetti surreptitiously invaded the couple's privacy while they were engaged in a private moment. Although the lights were on in the hotel room and the sheer curtains were slightly ajar, Officer Ankuda testified that it was easier to see outside the window looking in, and when looking out the window from inside the hotel room, one's reflection and the sheer curtains obscured the view of the parking lot. Both victims testified that they did not know they were being watched and that they would not have given anyone permission to watch them. They were both upset and felt their privacy was invaded. Although the shrubs were only waist to chest high, it

is not normal behavior to squeeze oneself between the bushes and the window of someone's obviously occupied hotel room.

**{¶39}** As to the defense's competing version of events, it is well-settled that when assessing the credibility of witnesses, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Furthermore, "if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." *Warren v. Simpson,* 11th Dist. Trumbull No. 98-T-0183, 2000 WL 286594, *3 (Mar. 17, 2000).

**{¶40}** Mr. Corradetti's second assignment of error is without merit.

### Misdemeanor Sentencing

**{¶41}** In his third assignment of error, Mr. Corradetti contends the trial court abused its discretion when it imposed the maximum 60-day jail sentence because it failed to consider the enumerated purposes of misdemeanor sentencing pursuant to R.C. 2929.21 and the factors pursuant to R.C. 2929.22. More specifically, he argues the trial court only considered punishment and not rehabilitation of the offender because he acknowledged his sex addiction, he had previously sought counseling, which he admittedly failed to continue after his mother passed away, and his attorney requested probation in order for him to address his addiction.

**{¶42}** "'Misdemeanor sentencing is within the discretion of the trial court and a sentence will not be disturbed absent an abuse of discretion.'" *State v. Corbissero*, 11th Dist. Ashtabula No. 2011-A-0028, 2012-Ohio-1449, ¶ 53, quoting *Conneaut v.*

12

Case No. 2021-L-079

*Peaspanen*, 11th Dist. Ashtabula No. 2004-A-0053, 2005-Ohio-4658, ¶ 18. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶43} R.C. 2929.21(A) provides that a court sentencing a misdemeanor offender "shall be guided by the overriding purposes of misdemeanor sentencing," i.e., "to protect the public from future crime by the offender and others and to punish the offender." A sentence imposed for a misdemeanor "shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B).

{¶44} To achieve the two overriding purposes and principles of misdemeanor sentencing, the sentencing court must consider the criteria set out in R.C. 2929.22(B). *State v. Cooper*, 11th Dist. Ashtabula Nos. 2015-A-0042, 2015-A-0043, 2015-A-0044, & 2015-A-0045, 2016-Ohio-4730, ¶ 9. R.C. 2929.22 does not, however, mandate that the trial court state on the record that it considered the applicable statutory factors. *State v. Kish*, 11th Dist. Lake No. 2010-L-138, 2011-Ohio-4172, ¶ 8. "'A silent record raises the presumption that the trial court considered all of the factors * * *.'" *State v. Peppeard*, 11th Dist. Portage No. 2008-P-0058, 2009-Ohio-1648, ¶ 75, quoting *Peaspanen*, *supra*, at ¶ 26. Consequently, when the misdemeanor offender's sentence is within the statutory limits and there is no affirmative indication on the record that the trial court failed to consider the factors set forth in R.C. 2929.22, the reviewing court is to presume the trial

13

court considered the applicable statutory factors when it imposed the sentence. *Peaspanen* at ¶ 18.

{¶45} Although even a silent record raises the presumption that the trial court considered the misdemeanor purposes and factors pursuant to R.C. 2929.21 and R.C. 2929.22 and Mr. Corradetti's sentence is within the statutory limits, the trial court in this case was explicit in its considerations both at the sentencing hearing and in the sentencing judgment entry. Mr. Corradetti failed to demonstrate the record contains an affirmative showing that the trial court did not consider the statutory purposes and factors. Mere disagreement with the trial court's sentence is not evidence of an abuse of discretion.

{¶46} Mr. Corradetti's third assignment of error is without merit.

{¶47} The judgment of the Willoughby Municipal Court is affirmed.

THOMAS R. WRIGHT, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-L-079